

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 12, 2025.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § § § § § | CHAPTER 7 CASE |
| ELIZABETH YETMAN CHAVEZ, Debtor. | | CASE NO. 23-51605-CAG |

| | | |
|---|---|---|
| RAMIRO CHAVEZ<br>Plaintiff, | § § § § | |
| v. | § § § | ADV. NO. 25-05028-CAG |
| ELIZABETH YETMAN CHAVEZ, Defendant. | § § § § § | |

### MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART THE COMPLAINT FOR DECLARATORY RELIEF FOR PROPERTY DIVISION OF PROPERTY HELD BY DEBTOR

This Memorandum Opinion resolves adversary proceeding *Ramiro Chavez v. Elizabeth Yetman Chavez*, Adv. No. 25-05028-CAG. On September 25, 2025, this Court concluded a two-day trial before taking the matter under advisement. The Court reviewed the entire record before

1

it, including all admitted exhibits. The Court considered the testimony and credibility of Ramiro Chavez ("Plaintiff") and Elizabeth Yetman Chavez ("Defendant"), the only two witnesses to testify. Additionally, the Court considered all evidentiary objections raised and sustained in making its findings of fact.

## JURISDICTION

As an initial matter, the parties have consented to, and the Court finds it has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.[1] This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate). Venue is proper under 28 U.S.C. § 1409(a). This matter is referred to the Court pursuant to the District's Standing Order of Reference. The Court makes findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052. As noted herein, Plaintiff seeks a declaratory judgment regarding specific property he asserts he owns, notwithstanding any claim of exemption or ownership by Defendant.[2]

## BACKGROUND

On November 21, 2023, the Defendant filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code. Johnny Thomas was appointed interim Chapter 7 trustee (the "Chapter 7 Trustee").

On December 5, 2023, Defendant filed her Schedules and Statement of Financial Affairs ("SOFA"). Before filing the Schedules, Defendant signed the Declaration Concerning Debtor's Schedules declaring under penalty of perjury that she had read the Schedules and that they were

---

[1] Unless otherwise noted' "ECF No. _" refers to the electronic case filing number in this adversary proceeding. Plaintiff and Defendant both consented to the Court's jurisdiction and authority to enter final orders. (ECF Nos. 12 and 7).

[2] Unless otherwise noted, all references are to Title 11, U.S.C. *et seq*. Although not specifically denominated in the Complaint, the Court finds that the statutory predicate for Plaintiff's claim is 28 U.S.C. § 2201—parties seeking declaratory relief.

true and correct to the best of her knowledge, information, and belief. Before filing the SOFA, Defendant signed the SOFA declaring under penalty of perjury that she had read the answers to the questions therein and that they were true and correct.

On February 13, 2024, Defendant filed Amended Schedule A/B, Amended Schedule C (the "Amended Schedules"), and an Amended Statement of Financial Affairs (the "Amended SOFA"). Before filing the Amended Schedules, Defendant signed the Declaration with the Amended Schedules, which declares under penalty of perjury that she read the Amended Schedules and that they were true and correct. Before filing the Amended SOFA, Defendant signed the Amended SOFA declaring under penalty of perjury that she had read the answers to the questions therein and that they were true and correct.

On April 4, 2024, Defendant filed Amended Schedules A/B, C, D, E/F, and H (the "Second Amended Schedules"). Before filing the Second Amended Schedules, Defendant signed the Declaration with the Second Amended Schedules that declares under penalty of perjury that she read the Second Amended Schedules and that they were true and correct.

On November 19, 2024, Defendant filed Third Amended Schedules A/B (the "Third Amended Schedules") and Amended SOFA. Before filing the Third Amended Schedules and Amended SOFA, Defendant signed the Declaration with the Third Schedules that declares under penalty of perjury that she read the Third Amended Schedules and that they were true and correct.

### THE PARTIES' CONTENTIONS

Plaintiff filed his Complaint seeking a declaratory judgment, asking this Court to declare some of Defendant's real and personal property as either Plaintiff's separate property, Defendant's separate property, or marital community property. At trial, the Plaintiff reduced his request for declaratory relief to one parcel of real property—9734 Mid Walk Drive, San Antonio, Texas,

78230 (referred to in some of the pleadings as the "Homestead Property"). Plaintiff's counsel affirmatively stated on the record that Plaintiff no longer contested or asserted any right to any property Defendant owned other than the Homestead Property.[3]

Conversely, Defendant requested in her prayer of her Answer (not through a counterclaim) that the Court:

> [D]eclare that Defendant Yetman retains full ownership of all separate property assets identified in this Answer, including but not limited to 9734 Mid Walk Drive and the items listed in Exhibit D; find that Chavez failed to meet his burden of proof to establish ownership over any disputed assets; deny Chavez's claim for damages for lack of evidence.

(ECF No. 5 at 18).

The Court indicated on the record at trial that it would first examine the Complaint, Answer, and proposed Pretrial Orders to determine if the Court had the requisite authority to grant the Plaintiff's request for declaratory relief. If the Court found that it had the authority, it would then make an evidentiary determination if the evidence substantiated Defendant's ownership property claims. The Court notes that Plaintiff in his Complaint asks the Court to "determine and declare the ownership and Possession of Property, whether it belongs to Plaintiff or the Defendant/Debtor."[4] Further, Plaintiff requests "the Court to determine and declare the ownership of these items" listed in Exhibit D to the Complaint.[5] Defendant states in her Proposed Pretrial Order that she asserts rights to personal property in the Homestead Property.[6] Based on the foregoing, the Court finds that it may determine the extent of Defendant's ownership property listed in Exhibit D to the Complaint as to the Plaintiff and Defendant.

---

[3] Trial Audio at 45:29–45:50, September 24, 2025.
[4] (ECF No. 1, ¶ 9).
[5] (Id., ¶10).
[6] (ECF No. 54 at 6).

4

## FINDINGS OF FACT

### I.    Stipulated Facts

Local Rule 7016-1(c) provides that the parties should file a joint pretrial order. If the parties cannot agree to a joint pretrial order, the parties may file separate pretrial orders. Plaintiff and Defendant filed separate pretrial orders.[7] Each party filed a list of stipulated facts, which are included below.

Plaintiff and Defendant married on November 15, 2014. On November 29, 2016, they executed a Marital Agreement with an effective date of November 16, 2014, confirming certain listed real and personal property as their sole and separate property and barring the creation of any community property during their marriage.[8]

The Marital Agreement confirmed the Homestead Property (9734 Mid Walk Drive, San Antonio, TX 78230) as Defendant's sole and separate property. Section I.A.1. of the agreement states: "Certain real and/or personal property that ELIZABETH currently owns, claims, or has a beneficial interest in, and that is described in Schedule A (attached hereto and made part of this Agreement for all purposes) is and shall remain ELIZABETH'S separate property." The referenced Schedule A entitled "Separate Property of Elizabeth Yetman Chavez aka Elizabeth Galvan Yetman" lists under "ASSETS," Real Property: NCB 13536 BLK: 1 LOT: 115 MID ACRES 9734 Mid Walk Drive, San Antonio, TX 78230.[9]

Defendant filed an Original Petition for Divorce with the Bexar County Civil District Clerk on September 2, 2022, cause no. 2022-CI-17204. On November 21, 2023, Defendant filed a petition for chapter 7 bankruptcy protection with this Court.[10] Within Defendant's bankruptcy

---

[7] (ECF Nos. 55, 54).
[8] Defendant Exhibit ("D-_") 7 (Exhibit A: Marital Agreement).
[9] (*Id.* at 2, 13).
[10] Bankruptcy No. 23-51605-cag (ECF No. 4).

proceeding, Ramiro Chavez filed a Motion for Relief from Stay on May 31, 2024,[11] and on June 20, 2024, filed an Amended Motion for Relief from Stay,[12] for the purpose of finalizing their divorce in state court. On June 21, 2024, the Court granted Chavez's Amended Motion for Relief from Stay, ordering in part, "The automatic stay remains in effect as to all assets of the bankruptcy estate, including those assets claimed as exempt assets, until further order of this Court."[13]

## II.      Facts Adduced at Trial

### A. Personal and Real Property Other Than 9734 Mid Walk Dr., San Antonio, Texas 78230.

As an initial matter, the Court has weighed the credibility of the two witnesses: Plaintiff Ramiro Chavez and Defendant Elizabeth Yetman Chavez. The Court finds both witnesses not credible. The evidence presented at trial was the proverbial "he said, she said" testimony and had limited probative value because the parties continually contradicted each other. Ms. Chavez had her discharge denied under various subsections of 11 U.S.C. § 727, in part, for her fraudulent statements and omissions in her Schedules and Statement of Financial Affairs.[14] Ramiro Chavez was ordered to repay $41,954.19 to the ARS Specialty Contractors, LLC ("ARS") Frost Bank account he misappropriated.[15] Further, each party accused (with some substantiation) that the other party misappropriated and mismanaged Ms. Chavez's business, ARS Specialty Contractors, LLC. The parties engaged in a swearing contest as to who was responsible for the demise of ARS Specialty Contractors, LLC, and their marriage.

---

[11] Bankruptcy No. 23-51605-cag (ECF No. 109).
[12] Bankruptcy No. 23-51605-cag (ECF No. 121).
[13] Bankruptcy No. 23-51605-cag (ECF No. 122).
[14] *Epstein v. Chavez*, Adversary No. 24-05024 (ECF No. 40) (Memorandum Opinion Granting in Part and Denying in Part First Amended Complaint).
[15] *In re ARS Specialty Contractors, LLC*, Bankruptcy No. 23-50751 (ECF No. 104) (Order Denying Motion to Dismiss [Doc. 54] and Granting Oral Motion to Convert Case to Chapter 7). Plaintiff was ordered to return $41,954.19 to Frost Bank, and Defendant was ordered to return $20,000.00 to Frost Bank.

By way of background, Defendant stated that she formed ARS in 2012 and that she is the 100% owner. Defendant stated that she wanted to keep ARS separate from her husband because Ramiro Chavez had judgments against him and was delinquent on paying payroll taxes for his business. Defendant stated that ARS was a woman-owned business that was given preference on certain contracts. Ramiro Chavez was the general manager of the ARS, and he operated ARS. Defendant explained that she did billing, marketing, and other operational responsibilities for ARS from 2016 to 2019. She further testified that ARS had gross sales of over $10 million for 2021 and 2022.

Ms. Chavez stated that she and her husband became estranged in 2019, and that Mr. Chavez moved out of their marital home in 2019. Ms. Chavez filed for divorce in September 2022, and the divorce case is still pending. Defendant stated that the pending divorce has been a distraction and has emotionally strained her. Defendant testified that ARS was in poor financial condition when she took it over in 2023. Upon taking over ARS again, Defendant explained that her focus was to collect accounts receivable. Ms. Chavez stated that she made the decision to put ARS into bankruptcy, but that she did discuss with Mr. Chavez business operations and her decision to file chapter 11 for ARS. Defendant explained that, in addition to ARS's financial distress, ARS was involved in litigation with some of its subcontractors and that there were several lawsuits pending.

Exhibit D is an exhibit that was attached to the Plaintiff's Complaint[16] and Creditor, Ramiro A. Chavez's Motion for Relief From Stay.[17] Exhibit D lists four parcels of real property.[18] Defendant scheduled the 9734 Mid Walk Dr., 9402 Wahada, 3214 Quakertown Dr., and 6403

---

[16] Adversary No. 25-05028 (ECF No. 1).
[17] Bankruptcy Case 23-51605 (ECF No. 109).
[18] The Homestead Property (9734 Mid Walk Dr.), 9402 Wahada, 3214 Quakertown Dr., and 6403 Ridge Place.

Ridge Place in her Schedules and Amended Schedules.[19] Neither party produced any documents—deeds of trust, promissory notes, tax appraisal documents, or bank records evidencing payments for any of the properties other than the Homestead Property. Ramiro Chavez did testify on cross-examination that, other than the Homestead Property, all the other real property listed on Schedule D was acquired during the marriage to Ms. Chavez. Ramiro Chavez suggested that the Wahada and Ridge Place properties were rental properties that he managed. Ramiro Chavez testified that it was an error to include the 9402 Wahada and 6402 Ridge Place properties on Exhibit D. The Court received scant evidence regarding the status of 3214 Quakertown property, other than it was scheduled as community property and may have been used as an investment property. Nonetheless, given that Plaintiff has relinquished any contest to Defendant's assertion that she owns 9402 Wahada, 3214 Quakertown, and 6403 Ridge Place as her separate property, the Court finds that these properties are Defendant's separate property.

As to personal property listed on Exhibit D, the Court notes two vehicles—2020 Tesla Model S and 2019 Cadillac Escalade ESV—were listed in Debtor's Amended Schedules.[20] The Tesla Model S was listed on Defendant's Inventory and Appraisement.[21] Defendant also scheduled the 2020 Tesla Model S as exempt on her Schedule C.[22] The Defendant also lists on Her Statement of Intention that she is retaining the 2020 Tesla Model S and will continue to make payments.[23] The 2019 Cadillac Escalade ESV is not listed on the Statement of Intention, but is listed on Schedule D to the Complaint. The Court received no evidence regarding the 2019 Cadillac

---

[19] D-1, 2, and 3. The Homestead Property (9734 Mid Walk) is listed as community property in Defendant's Schedules. 9402 Wahada is listed as Defendant's separate property as an investment property. 3214 Quakertown Dr. is listed as community property as an investment property. 6402 Ridge Place is listed as community property. In Defendant's Inventory and Appraisement (D-9) Defendant only lists 9734 Mid Walk as her separate property.
[20] D-3 at Part 2 Bankruptcy Case 23-51605 (Amended Schedules dated November 19, 2024) (ECF No. 125).
[21] D-9 at 000064.
[22] D-1 at p. 13 of 167.
[23] D-1 at p. 156 0f 167.

Escalade ESV other than that Plaintiff apparently did not want it, so the Court will find that the 2019 Cadillac Escalade ESV is Defendant's separate property. Finally, as to other personal property listed on Exhibit D, the only item that the Court received evidence was on the Bourbon ("liquor") collection on Schedule D, which was valued at $200,000.00.[24] Defendant produced a photo of the remaining liquor bottles, which consisted of 21 bottles of an unspecified value with several empty boxes that allegedly contained liquor. Defendant alleges that Plaintiff had removed the remaining liquor from the Homestead Property. Plaintiff no longer asserts an interest in the liquor, and the Court finds that it is Defendant's separate property. Finally, Exhibit D contains several household items such as high-end appliances, furniture, jewelry, a piano, and outdoor furniture. The Court did not receive any evidence from either party as to the ownership of these items, and given that Plaintiff no longer wants this Court to determine that he owns these items, the Court finds that the remaining personal property listed on Exhibit D is Defendant's separate property.

### B. 9734 Mid Walk, San Antonio, Texas 78230 ("Homestead Property").

The parties did provide both documentary evidence and oral testimony regarding the transactional history and ownership of the Homestead Property. Defendant purchased the property on December 2, 2005, according to a Settlement Statement and General Warranty Deed with Vendor's Lien as her separate property.[25] Plaintiff and Defendant married on November 15, 2014. On November 29, 2016, they executed a Marital Agreement with an effective date of November 16, 2014, confirming certain listed real and personal property as their sole and separate property and barring the creation of any community property during their marriage.[26] The

---

[24] D-4 at Ex. D Bankruptcy Case 23-51605 (Complaint) (ECF No. 1-4).
[25] D-6.
[26] D -7 (Exhibit A: Marital Agreement)

Homestead Property is specifically stated to be Defendant's separate property.[27] Nonetheless, between the time that the parties were married and they executed their Marital Agreement, Defendant and Plaintiff executed a Texas Home Equity Security Instrument for the Homestead Property on March 25, 2015, in which Plaintiff and Defendant are listed as "Borrower" and husband and wife.[28] Thereafter, both Plaintiff and Defendant executed a Deed of Trust with Randolph Federal Credit Union on January 21, 2020, for roughly $350,000.00.[29] There is a Construction Loan Addendum attached to the Deed of Trust.[30] The Randolph Federal Credit Union Deed of Trust is a renewal and extension of the March 25, 2015, home equity loan.[31]

Plaintiff and Defendant also executed a General Warranty Deed on January 21, 2020.[32] Thereafter, on October 24, 2020, both Plaintiff and Defendant executed a Deed of Trust and Renewal and Extension with Cornerstone Lending for $365,695.00.[33] Plaintiff and Defendant are listed as "Borrower" and husband and wife on the Deed of Trust.[34] The 2023 Notice of Appraised Value for the Homestead Property lists Plaintiff and Defendant as owners.[35] Finally, Defendant lists in her Original Schedules that the Homestead Property is community property in Schedule A.[36] The Homestead Property is scheduled as exempt of Defendant's Schedule C.[37] Defendant lists the Homestead Property as community property on her Amended Schedules.[38]

---

[27] *Id*.
[28] Plaintiff's Exhibit ("P-_") 7 at 00034.
[29] P-7 at 00041. The parties are listed as "Borrower" and husband and wife.
[30] *Id*. at 00046. Both parties executed the Addendum. *Id*. at 00047.
[31] *Id*. at 00049.
[32] P-8.
[33] P-9.
[34] *Id*. at 00054.
[35] P-10.
[36] D-1 Bankruptcy No. 23-51605 (ECF No. 13 at p. 1 of 167).
[37] *Id*. at p. 13 of 167.
[38] D-2 Bankruptcy No. 23-51605 (ECF No. 32 at p. 1 of 28).

Defendant lists the Homestead Property as her community property on the Third Amended Schedules filed on November 19, 2024.[39]

Plaintiff acknowledged that the purpose of the Marital Agreement was to shield Defendant from Plaintiff's outstanding judgments and tax liabilities against him. Further, Plaintiff agreed that he had previously been divorced and that he and the Defendant did not want Plaintiff's first wife to have any ability to enforce a judgment against the Homestead Property. Plaintiff agreed that the Marital Agreement was executed in part to keep the Homestead Property as Plaintiff's separate property.

Ramiro Chavez testified that the purpose of the January 21, 2020, Deed of Trust[40] and General Warranty Deed[41] was to convey a half-interest in the Homestead Property to him. Mr. Chavez testified that the January 21, 2020, General Warranty Deed was a gift from Defendant to him.[42] Plaintiff stated that he would deposit money into Defendant's Frost Bank Account XXX-5464 (Defendant's separate account) and those funds would pay for the Homestead Property mortgage.[43] Plaintiff testified that the reason Defendant conveyed a half-interest in the Homestead Property to him was that he was generating significant income from ARS to pay for household expenses, including the mortgage on the Homestead Property. Plaintiff also stated that he sought a determination in the state court divorce proceeding that he owns a half interest in the Homestead Property. Plaintiff produced no account records reflecting any payments he made to the Frost Account or if he made direct payments on the Homestead Property Mortgage. Also, Plaintiff

---

[39] D-3 Bankruptcy No. 23-51605 (ECF No. 125 at p. 1 of 28)

[40] P-7.

[41] P-8.

[42] P-8. There is no reference or documentation evidencing a gift in the General Warranty Deed or Deed of Trust.

[43] See P-2 which specifically states the Frost Account is a convenience account that Plaintiff does not own but can account transactions such as using a debit card linked to that account. Defendant testified that she added Plaintiff to the account as an "agent" and corroborated Defendant's testimony that the Frost Account was used to pay the mortgage and household expenses for the Homestead Property.

acknowledged that he did not deposit any money into the Frost Account after Defendant filed for divorce. Plaintiff testified that the state court ordered Defendant to make the mortgage payments on the Homestead Property.[44]

Defendant testified that the only reason she put Defendant on the Texas Home Equity Security Instrument[45] was that because she was seeking a home equity loan for the Homestead Property, Texas law required that her husband be on the title.[46] If Defendant had not put Plaintiff's name on the title, it would have had to be on the Deed of Trust. Defendant maintained that she did not want to execute a General Warranty Deed on January 21, 2020, for the Homestead Property and include Plaintiff on the title, but it was the only way she could consummate the loan.[47] Defendant explained that she showed the closing agent the Marital Agreement regarding 9734 Mid Walk Drive property being her separate property, but the agent told her that the Marital Agreement could not override the lender's requirement that Plaintiff sign the General Warranty Deed. Further, Defendant stated that part of the motivation in getting the loan in January 2020 was to use some of the proceeds to pay off a prior lien on the Mid Walk property arising from Defendant's prior divorce settlement.

Similarly, Defendant stated that the reason she agreed to put Plaintiff on the October 24, 2020, Deed of Trust for the Homestead Property was so that she could obtain the loan with Cornerstone and pay off the Construction loan with Randolph Brooks Federal Credit Union.[48] There is no documentation showing that Defendant asked Cornerstone at the closing if she could

---

[44] Plaintiff also testified that Defendant prepared the Marital Agreement and General Warranty Deed, suggesting that Defendant used her superior legal training to take advantage of Plaintiff. The Court received competent evidence that was not case and that an independent third party prepared the documents.
[45] P-6.
[46] *See* P-4 (email exchange between lender and Defendant that to receive a home equity loan on the Mid Walk property that Plaintiff had to be on the title).
[47] There are no contemporaneous writings to substantiate Defendant's intentions.
[48] P-9.

keep her husband off the Deed of Trust. Defendant recognized that Bexar County Appraisal District showed the Homestead Property as community property in its 2023 assessment, and her bankruptcy Schedules consistently showed the Homestead Property as community property. Nonetheless, Defendant asks this Court to enforce the Marital Agreement, rather than the 2020 Deed of Trust.[49] Defendant testified that she did gift two properties (not the Homestead Property) from her separately owned business—Gavin Investments, LLC—to Plaintiff on November 16, 2021.[50]

### ANALYSIS

Plaintiff's argument is that the 2020 Deed of Trust conveying the Homestead Property from Defendant to Defendant and Plaintiff was a gift. Further, notwithstanding Defendant's argument that the "inception of title" rule under Texas law would apply to Defendant's assertion that the Homestead property is her separate property, that presumption can be overridden if there was a gift. In addition, the only documents in evidence since the January 2020 General Warranty Deed are the 2023 Bexar County Appraisal and the Defendant's bankruptcy Schedules, which all list the Homestead Property as community property. Defendant states that under the inception of title rule, the Homestead Property was her separate property as early as 2005, predating her marriage to Plaintiff. The Marital Agreement memorialized the parties' agreement that 9734 Mid Walk is Defendant's separate property. Further, the January 2020 General Warranty Deed conveying the Homestead Property from Defendant individually to herself and Ramiro Chavez was a procedural mechanism to finalize the refinancing of a mortgage loan. The parties agree that the Frost Bank Account XXX5464 was used to pay the mortgage on the Homestead Property and that Defendant

---

[49] P-9.
[50] P-3.

made the mortgage payments after she filed for divorce. What is not clear is who made the mortgage payment from the time the parties were married until Defendant filed for divorce.

Section 541(a)(1 and 2) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--
(A) under the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

The Supreme Court has held that "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). The Court held that unless a federal interest requires a different result, state law should apply to property interests in bankruptcy. *Id*. The Texas Family Code defines a spouse's separate property as: (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. TEX. FAM. CODE ANN. § 3.001.

The evidence is clear that Defendant owned the Homestead Property as her separate property as early as 2005. She and Plaintiff agreed that the Homestead Property would be her separate property under the Marital Agreement. The fact that community funds may have been used to pay the mortgage does alter the character of the Homestead Property as Defendant's separate property. *Gleich v. Bongio*, 99 S.W.2d 881, 885 (Tex. [Comm'n Op.] 1937) ("The improvement of separate property with community funds does not change the status of the property . . . .").

Defendant maintains that she used the Frost Bank Account XXX5464 as her separate account, and therefore, all funds from that account were her separate property used to pay the mortgage on the Homestead Property. ***McKinley v. McKinley***, 496 S.W.2d 540, 543 (Tex. 1973) (tracing is required for separate property to remain separate during the marriage if funds are used to maintain the separate property). But here the Court cannot rely on that presumption for at least two reasons: (1) there are no bank records to substantiate if separate funds were used to pay the mortgage; and (2) there was testimony from Ramiro Chavez (unrebutted by Elizabeth Chavez) that Plaintiff's earnings from ARS were deposited in the Frost bank Account XXX5464 and used to pay the Homestead Property mortgage.

Defendant argues that were the Court to rule in favor of Plaintiff, the Court would divest Defendant of her separate property under the Marital Agreement, which Texas courts have refused to do. *See **Cameron v. Cameron***, 641 S.W.2d 210, 213 (Tex. 1982) ("Allowing a trial court to divest separate property from one spouse and award it to the other spouse as part of the latter's separate estate would impermissibly enlarge the exclusive constitutional definition of separate property.") ***Id.*** This rule can be overcome if a spouse gifts property to another spouse.

The Texas Supreme Court held in ***Cockerham v. Cockerham***, 527 S.W.2d 162, 168 (Tex. 1975) that when a spouse uses separate property to pay for land during marriage and takes title to the land in the name of husband and wife, it is presumed to be a gift. "This presumption, however, can be rebutted by evidence clearly establishing there was no intention to make a gift." ***Id.*** The burden is on Defendant to show that her intention was not to make a gift.

As an initial matter, Defendant and Plaintiff cancel out each other's testimony as to whether Defendant intended a gift (Plaintiff testified it was a gift; Defendant said she did not intend the conveyance to be a gift). The January 2020 General Warranty Deed indicates a gift was made from

Defendant to Defendant and Plaintiff as husband and wife. Defendant does not have any contemporaneous documentation showing her intention at the time the General Warranty Deed was executed that she was not making a gift, and that this was merely a "procedural mechanism" to effectuate a closing of a loan. Rather, the admitted exhibits show that Defendant did not challenge her 2023 tax appraisal listing her and Ramiro Chavez as owning the Mid Walk property as community property, and her own Original and Amended Schedules show the 9743 Mid Walk property as community property. Defendant has not met her burden, and the Court finds that 9734 Mid Walk, San Antonio, Texas 78230 is community property, and that Ramiro Chavez is awarded a half-interest in the property. Plaintiff may petition the state court for disposition of 9734 Mid Walk, San Antonio, Texas 78230 as part of the divorce proceeding. All other property listed on Exhibit D to the Complaint is deemed Defendant's separate property.

CONCLUSION

For the reasons stated herein, the Plaintiff's Complaint is GRANTED IN PART and DENIED IN PART. Specifically, the Plaintiff's Complaint for a declaratory judgment that the property located at 9734 Mid Walk, San Antonio, Texas 78230 is community property is GRANTED. Plaintiff's claim as to the remaining real and personal property identified on Exhibit D to the Complaint is DENIED. The Court finds that Defendant owns all other real and personal property identified on Exhibit D. All other relief is DENIED.

# # #